IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A&B CAMPBELL FAMILY, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) Civil Action No. 3:15-CV-340 |
| vs. | ) ) |
| CHESAPEAKE ENERGY CORPORATION*, et al.*, | ) ) ) ) |
| Defendants. | |

**SUPPLEMENT TO MOTION TO DISMISS OF DEFENDANTS WILLIAMS PARTNERS, LP, ACCESS MLP OPERATING, LLC, AND APPALACHIA MIDSTREAM SERVICES, LLC**

Defendants Williams Partners, L.P., f/k/a Access Midstream Partners, L.P. ("Access"); Access MLP Operating, L.L.C. ("Access MLP"); and Appalachia Midstream Services, L.L.C. ("Appalachia Midstream," and collectively with Access and Access MLP, "Access Defendants"), submit this Supplement to their *Motion to Dismiss* [Dkt. No. 115] and the *Brief in Support* thereof [Dkt. No. 116], both filed September 18, 2015 (the "Motion to Dismiss") as well as their *Reply Brief* in support thereof [Dkt. No. 129], filed on November 20, 2015.

## INTRODUCTION

This case always been a dispute about whether Chesapeake Energy Corporation ("Chesapeake") and other entities holding working interests in

Plaintiffs' oil and gas leases breached the terms of those leases by deducting certain post-production costs from the royalty calculation. Plaintiffs' attempts to convert these simple contract claims into an insidious antitrust/RICO/conspiracy scheme are even less availing now that all claims against the principal actor – Chesapeake and affiliated entities – have been dismissed with prejudice. *See* Notice of Dismissal, Dkt. No. 182. As Plaintiffs allege, these "schemes" were "originated and orchestrated by defendant Chesapeake." *See* Amended Complaint, Dkt. No. 94 (the "Complaint"), ¶ 7.

At a telephonic status conference on March 14, 2024, the Court lifted the stay in this matter and ordered the parties to file supplemental briefing on their pending motions by April 19, 2024, Dkt. No. 191. In accordance with the Court's order, Access Defendants offer the following supplemental arguments and authorities.

## ARGUMENT AND AUTHORITIES

**I.   PLAINTIFFS FAILED TO ALLEGE ANTITRUST INJURY.[1]**

A plaintiff who fails to allege antitrust injury has failed to state a claim. In *Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 336 (3d Cir. 2018), the Third Circuit affirmed the district court's order dismissing the plaintiff taxicab drivers' antitrust claims against defendant Uber for failure to state an antitrust injury.

---

[1] *See* Motion to Dismiss [Dkt. 116], page 14, § I.

2

The plaintiffs alleged that Uber's entry into the Philadelphia market caused them economic harm: reduced market share, fewer drivers, and a decline in ridership. *Id.* at 344. The court, however, found that even concrete financial harm was not an antitrust injury because it did not have a "negative impact on consumers or to competition in general." *Id.* Although the taxicab drivers might have been harmed personally, there was no antitrust injury because there was no allegation that competition had been harmed. *Id.*

So too here, there has not been an allegation that competition has been harmed. Plaintiffs allege that Chesapeake had a monopoly on gathering services in the AMI, and that by entering into the CMO Acquisition and Marcellus Gathering Agreement, Chesapeake transferred that monopoly power to Access.[2] *See* Complaint, ¶¶ 16–18, 175, 199, 246–247. Thus, from the perspective of the consumer, there was no change in the level of competition. One provider was merely substituted for another. And because Plaintiffs failed to allege that competition has been harmed, they failed to state an antitrust injury. *See Philadelphia Taxi Ass'n, Inc*, 886 F.3d at 343 (holding the alleged "injury must reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation."); *Premier Comp Sols. LLC v. UPMC*, 377 F. Supp. 3d 506, 524 (W.D.

---

[2] Capitalized terms used herein have the same meaning ascribed to them in the Motion to Dismiss.

3

Pa. 2019) ("[T]o state a viable antitrust injury, a plaintiff must generally show that it is a competitor or a consumer in the relevant product and geographic markets *in which competition was adversely impacted*.") (emphasis added).

In addition, on November 11, 2015, Plaintiffs filed a notice of supplemental authority [Dkt. No. 131] and attached *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015). There, a supermarket chain (ShopRite) filed numerous administrative challenges with respect to permit applications sought by a property management company (Hanover) who planned to develop a Wegmans supermarket. *Id* at 166. Hanover then filed suit, alleging antitrust violations as a result of ShopRite's attempts to restrain its entry into the market. *Id*. In response, ShopRite argued that Hanover, as a property development company, was neither a consumer or competitor in the relevant market and therefore could not allege antitrust injury. *Id*. at 172. On appeal, the court agreed that Hanover was not a competitor or a consumer, but concluded that it alleged antitrust injury because the harm Hanover suffered (*e.g.* delay in development) was "inextricably intertwined" with ShopRite's attempt to restrain market entry. *Id.* at 173.

This case does not impact the Access Defendants' argument that Plaintiffs have failed to allege antitrust injury. There has not been a contention that Plaintiffs are not market participants. The Access Defendants instead contend that Plaintiffs have failed to allege a reduction in competition. In *Hanover*, there was an express

4

allegation that competition was reduced: by filing challenges to permits authorizing construction of a Wegmans, ShopRite was preventing the entry of a competitor into the market and thereby reducing competition. Here, again, the alleged level of competition remained constant.

Plaintiffs allege that prior to the purported conspiracy, Chesapeake had the sole right to provide gas gathering services to its wells; after the purported conspiracy, they allege that Access had the sole right to provide gas gathering services to Chesapeake's wells. Even if Plaintiffs' allegations are taken as true, the providers may have changed but the competition did not. Where one exclusive provider is substituted for another, there is neither reduction in competition nor antitrust injury. *Balaklaw v. Lovell,* 14 F.3d 793, 798-99 (2d Cir. 1994).

## II. PLAINTIFFS FAIL TO STATE RICO AND RICO CONSPIRACY CLAIMS AGAINST ACCESS, AMLP OR APPALACHIA MIDSTREAM.[3]

In order to state a RICO claim under 18 U.S.C. §1962(c) and a RICO conspiracy claim under 18 U.S.C. §1962(d), Plaintiffs must show that Access, AMLP and Appalachia Midstream knowingly agreed to participate in a common plan with the other Defendants and/or knowingly agreed to commit predicate acts and had knowledge that those acts were part of a pattern of racketeering activity. *In re Brokerage Antitrust Litig.*, 618 F.3d 300, 364 (3d Cir. 2010) (citations omitted).

---

[3] *See* Motion to Dismiss [Dkt. 116], page 30, § IV.

5

Plaintiffs' Complaint fails to allege any level of particularity that Access, AMLP or Appalachia Midstream knowingly agreed to participate in a common plan with the other Defendants or a purported RICO conspiracy. Instead, the Plaintiffs allege only that Access, AMLP or Appalachia Midstream "must have known" that Chesapeake could not afford to pay the agreed-upon gathering fees unless it passed a proportionate share of those gathering fees on to Plaintiffs through royalty deductions. As set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Courts have routinely rejected general allegations that a defendant "must have known." In *Cheeks v. Fort Myer Construction Corp.*, 216 F. Supp. 3d 146, 168 (D.C. 2016) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955), the District Court for the District of Columbia found that conclusory allegations that defendant "must have known" about incidents of collusion and bid riggings and failed to report a RICO enterprise were insufficient to state a claim for relief. Similarly, In *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 687 (11th Cir. 2010), the Eleventh Circuit Court of Appeals found that allegations the defendants "must have known" about a fraudulent scheme and violations of securities laws were insufficient to state a claim for relief.

*See also Mittal v. Kilpatrick*, 2017 WL 1752930, Case No. 2:15-CV-01037-KJD-VCF, *3 (D. Nev. May 4, 2017) (finding that allegations that defendant "must have known" of a global conspiracy were insufficient to state a claim for relief under 42 U.S.C. §§ 1985, 1986);[4] *In re Key Energy Services, Inc.,* 166 F. Supp. 3d 822, 870 (S.D. Tex. 2016) (finding that allegation in shareholder's class action complaint that personnel at the highest level of on-shore, rig based, well-servicing corporation, and unnamed senior management "must have known" of alleged violations of the Foreign Corrupt Practices Act based on their positions was group pleading insufficient to state a claim for securities fraud); *Ahmed v. City of Antioch, California,* 2016 WL 8729938, Case No. 16-cv-01693-HSG, * 4 (N.D. Cal. July 1, 2016) (finding allegations that defendants "must have known" of inadequate policies and procedures were insufficient to state a supervisory liability claim under 42 U.S.C. §1983);[5] *Nappier v. Pricewaterhouse Coopers LLP,* 227 F.Supp.2d 263 (D. N.J. 2002) (recognizing that allegations that auditor "must have known" of allegedly deceptive practices were insufficient to state a claim for securities fraud); *Brown v. Montgomery*, 2024 WL 1243669, Case No. 20 CV 04893, *8 (N.D. Ill. March 22, 2024) (slip opinion) (finding that facts that defendant knows a party to be a person of integrity did not create a reasonable inference that defendant "must have known"

---

[4] Pursuant to L.R. 7.08(a) this opinion is attached hereto as Exhibit 1.
[5] Pursuant to L.R. 7.08(a) this opinion is attached hereto as Exhibit 2.

7

statements about the party's misconduct were false and were insufficient to state a claim for relief).[6]

There is not a single factual allegation in the Complaint suggesting that Access had any knowledge of, or interest in, how Chesapeake, Anadarko, Statoil, or Mitsui accounted to Plaintiffs for post-production costs. Plaintiffs' allegations that Access "must have known" are too speculative and conclusory to establish that Access knowingly agreed to participate with Chesapeake in a plan to defraud Plaintiffs.

As to AMLP and Appalachia Midstream, the Complaint contains no allegations whatsoever regarding their participation in the purported RICO enterprise. Indeed, AMLP is only mentioned by name twice in the entire Complaint. *See* Complaint, ¶¶ 25, 123. And, neither AMLP nor Appalachia Midstream are specifically named in the Third and Fourth Causes of Action for RICO Violations and Conspiracy to Violate RICO. In *Russo v. Lamancusa*, 2024 WL 1433637, No. 23-1820 (3d Cir. April 3, 2024),[7] the plaintiff alleged RICO claims against the Lawrence County District Attorney and an officer of the county's special investigation unit. Because the plaintiff did not specifically name the individual officer in the actual RICO count of the of the operative complaint, the RICO claim against the officer was dismissed.

---

[6] Pursuant to L.R. 7.08(a) this opinion is attached hereto as Exhibit 3.
[7] Pursuant to L.R. 7.08(a) this opinion is attached hereto as Exhibit 4.

Moreover, as described by Plaintiffs, the CMO Acquisition and Marcellus Gathering Agreement are solely between Access and Chesapeake. *See* Complaint, ¶¶ 189, 198, 204. Therefore, they cannot plausibly support an enterprise or conspiracy involving non-parties to these agreements. Access' conduct in negotiating the CMO Acquisition and Marcellus Gathering Agreement is entirely consistent with conducting its own affairs and not part of an enterprise or scheme to defraud Plaintiffs. The Complaint offers no facts, even if taken as true, to state a claim otherwise.

## III.  PLAINTIFFS FAILED TO ALLEGE IDENTIFIABLE FUNDS THAT HAVE BEEN CONVERTED AND THEREFORE FAILED TO STATE A CLAIM AGAINST THE ACCESS DEFENDANTS FOR CONVERSION.[8]

A plaintiff who fails to allege identifiable funds has failed to state a claim for conversion. The tort of conversion "contemplates re-delivery of goods," and therefore money cannot be converted unless the funds are "able to be described, identified, or segregated in the manner that a specific chattel can be." *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 277 (W.D. Pa. 2021) (applying Pennsylvania state law). In *Figueroa*, the plaintiff students asserted a claim for conversion of tuition funds against the defendant university after the university conducted online classes as a result of the COVID-19 pandemic. *Id*. at 261. The court dismissed the

---

[8] *See* Motion to Dismiss [Dkt. 116], page 38, § VI.

9

conversion claim, concluding that conversion does not lie where there is some "obligation to return monies generally," but only where there is "an obligation on the part of the defendant to return the specific coin or notes [e]ntrusted to his care." *Id*. at 277 (quoting *Alexander & Co. v. Goldstein*, 13 Pa. Super. 518, 522 (1900)). The tuition funds, however, were general monies intermingled with other funds held by the university, not specifically identifiable chattel that could be recovered. *Id*. at 277–278. Consequently, the students' claims were dismissed.

Here, the Plaintiffs do not seek to recover specific chattel that is identifiable and segregated. They instead seek monetary damages in the amount of royalty payments allegedly wrongfully deducted. *See* Complaint, ¶¶ 317. Even assuming this occurred, Plaintiffs seek to recover monies generally not specific coins or notes. The royalty payments that Plaintiffs seek as damages have been intermingled and cannot be specifically returned to the Plaintiffs. Accordingly, Plaintiffs have failed to state a claim for conversion.

The Court in *Figueroa* further recognized that under Pennsylvania law, "a plaintiff may not ordinarily recover for the tort of conversion for a breach of duty that simply restates a contractual obligation." *Id*. at 277. The Third Circuit, applying Pennsylvania law, has also recently held that "a claim for conversion cannot stand when there is a contract between the parties that governs the same disputed funds. Courts have denied claims for conversion in that situation because the dispute is

better handled as a breach of contract." *Scott v. PNC Bank, Nat'l Ass'n*, 785 F. App'x 916, 920 (3d Cir. 2019). Plaintiffs' conversion claim (Defendants wrongfully deducted certain charges from royalty payments) is expressly duplicative of their breach of contract claim (Defendants wrongfully deducted certain charges from royalty payments.) The conversion claim should be dismissed.

### IV. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACCESS DEFENDANTS FOR CIVIL CONSPIRACY.[9]

A plaintiff who fails to state claim for the tort underlying the civil conspiracy has also failed to state a claim for civil conspiracy. *Jeter v. Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 469 (3d Cir. 2004) (applying Pennsylvania state law) ("Finally, because Jeter failed to assert a viable claim for any of the intentional torts in his complaint, the claim for civil conspiracy must also fail."). Here, Plaintiffs allege the underlying tort is conversion. *See* Complaint, ¶ 329. And because the Plaintiffs cannot state a claim for conversion, they cannot state a claim for civil conspiracy either. Pennsylvania federal courts have recently and routinely applied this rule to dismiss civil conspiracy claims. *See Miller v. Amazon.com Servs., Inc.*, 543 F. Supp. 3d 80, 89 (E.D. Pa. 2021) (dismissing civil conspiracy claim because "the Court already dismissed Plaintiff's negligence claim with prejudice."); *Reese v. Pook & Pook, LLC*, 2019 WL 13178512, at *1 (E.D. Pa. Jan. 23, 2019) (dismissing

---

[9] *See* Motion to Dismiss [Dkt. 116], page 40, § VII.

civil conspiracy claim because plaintiffs "fail to assert an underlying tort.");[10] *Kilbride Invs. Ltd. v. Cushman & Wakefield of Pennsylvania, Inc.*, 294 F. Supp. 3d 369, 381 (E.D. Pa. 2018) ("[I]f a court concludes that no tort was committed, there can be no civil conspiracy to commit that tort.").

## CONCLUSION

The Court should dismiss the antitrust, RICO, conversion, and civil conspiracy claims asserted against the Access Defendants. First, Plaintiffs have failed to state an antitrust claim because they fail to allege an antitrust injury and fail to allege a legally sufficient relevant market. Second, Plaintiffs have failed to state a RICO claim because they fail to allege: (a) the existence of a RICO enterprise, (b) the Access Defendants participated in the conduct of the affairs of the purported enterprise, (c) the Access Defendants participated in a pattern of racketeering activity, or (d) the Access Defendants agreed to participate in a RICO conspiracy. Third, Plaintiffs have failed to state a conversion claim because they fail to allege the Access Defendants exercised control over identified and segregated funds. Finally, Plaintiffs have failed to state a claim for civil conspiracy because they have failed to allege a valid underlying tort or any plausible allegations of a conspiracy.

---

[10] Pursuant to L.R. 7.08(a) this opinion is attached hereto as Exhibit 5.

For these reasons and those articulated in the Motion to Dismiss [Dkt. No. 115, 116, and 129] and herein, the Access Defendants move the Court to dismiss all claims Plaintiffs assert against them in the Amended Complaint [Dkt. No. 94].

Respectfully submitted,

*s/Kayci B. Hughes*
Kayci B. Hughes, OBA #18399
(Admitted *Pro Hac Vice*)

-Of the Firm-

CROWE & DUNLEVY
A Professional Corporation
222 North Detroit Avenue
Suite 600
Tulsa, OK 74120
(918) 592-9800
(918) 592-9801 (Facsimile)
kayci.hughes.@crowedunlevy.com

and-

John S. Summers, PA Bar ID #41854
One Logan Square, 27th Floor
Philadelphia, PA 19310
(215) 496-7062
jsummers@hangley.com

*Attorneys for Attorneys for Access Midstream Partners, L.P., Access MLP Operating, L.L.C., and Appalachia Midstream Services, L.L.C.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 19th day of April, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing systems.  Parties may access the filing through the Court's CM/ECF System.

                                      *s/Kayci B. Hughes*
                                      Kayci B. Hughes