# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**A&B CAMPBELL FAMILY LLC, et al.,**

        **Plaintiffs,**

        **vs.**

**WILLIAMS PARTNERS, L.P., et al.,**

        **Defendants.**

:
:
:
:
:
:
:

**Case No. 3:15-cv-00340**

**(Mehalchick, J.)**

## ANADARKO E&P ONSHORE LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT <u>PURSUANT TO RULE 12(b)(6)</u>

DECHERT LLP
Steven E. Bizar (PA 68316)
Michael Doluisio (PA 75060)
Elisa Beneze (PA 333485)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: 215-994-2205
Steven.bizar@dechert.com
Michael.doluisio@dechert.com
Elisa.beneze@dechert.com

Attorneys for Defendant
Anadarko E&P Onshore LLC

# <u>TABLE OF CONTENTS</u>

**Page**

PROCEDURAL HISTORY ........................................................................2

PLAINTIFFS' FACTUAL ALLEGATIONS .............................................4

STATEMENT OF QUESTIONS INVOLVED ..........................................8

LEGAL STANDARD ..............................................................................8

ARGUMENT ............................................................................................9

I.      PLAINTIFFS FAIL TO STATE SHERMAN ACT CLAIMS. ........................9

    A.      Plaintiffs Lack Standing to Bring Antitrust Claims. ............................9

    B.      Plaintiffs Do Not Allege An Anticompetitive Agreement..................13

        1.      Plaintiffs Fail to Allege Facts Supporting an Anticompetitive Agreement under Section 1............................13

        2.      Plaintiffs Fail to Allege Facts Supporting a Conspiracy to Monopolize the Market for Gathering Services .......................15

II.     THE RICO CLAIMS SHOULD BE DISMISSED ........................................17

    A.      Plaintiffs Do Not Allege an Association-in-Fact RICO Enterprise.........................................................................................17

    B.      The Plaintiffs Have Failed to Allege a Pattern of Racketeering Activity in Compliance with Rule 9(b)................................................20

    C.      Plaintiffs' RICO Conspiracy Claim Fails............................................22

III.    PLAINTIFFS' CONTRACT CLAIM FAILS AS A MATTER OF LAW..........................................................................................................22

CONCLUSION ......................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................8, 9, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................8, 11, 15

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
    429 U.S. 477 (1977)................................................................................9

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ..............................................................14

*Cable Line, Inc. v. Comcast Cable Commc'ns of Pennsylvania, Inc.*,
    No. 3:16-CV-1000, 2017 WL 4685359 (M.D. Pa. Oct. 18, 2017)....................10

*Camaisa v. Pharm. Rsch. Assocs., Inc.*,
    No. 21-CV-00775-EJW, 2022 WL 843653 (D. Del. Mar. 22, 2022)................11

*Coastal Forest Res. Co. v. Chevron U.S.A., Inc.*,
    No. 2:20-CV-1119, 2021 WL 1894596 (W.D. Pa. May 11, 2021) ...................22

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
    806 F.3d 162 (3d Cir. 2015) ......................................................................12, 13

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
    32 F.4th 242 (3d Cir. 2022) ..............................................................11

*In re Mexican Gov't Bonds Antitrust Litig.*,
    412 F. Supp. 3d 380 (S.D.N.Y. 2019) ...............................................17

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011)..................................................17

*Int'l Constr. Prod. LLC v. Caterpillar Inc.*,
    No. CV 15-108-RGA, 2016 WL 264909 (D. Del. Jan. 21, 2016)....................17

*Kerwin v. Casino*,
    802 F. App'x 723 (3d Cir. 2020) ..............................................................14, 15

*Kilmer v. Elexco Land Servs., Inc.*,
    990 A.2d 1147 (Pa. 2010) .......................................................................10, 15, 22

*Kovarik v. S. Annville Twp.*,
    No. 1:17-CV-00097, 2018 WL 1428293 (M.D. Pa. Mar. 22, 2018)..................21

*Leeder v. Feinstein*,
    No. 318CV12384BRMDEA, 2019 WL 2710794 (D.N.J. June 28, 2019)...19, 20

*Neurosurgical Care, LLC v. Doc Sols. LLC*,
    No. CV 19-5751, 2022 WL 2974716 (E.D. Pa. July 26, 2022) .........................21

*Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018) ...........................................................................9, 11

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ................................................................................4

*Pollock v. Energy Corp. of Am.*,
    No. CIV.A. 10-1553, 2011 WL 3667289 (W.D. Pa. June 27, 2011) ................23

*Ulmer v. Chesapeake Appalachia*, LLC,
    No. 4:08-CV-2062, 2011 WL 1344596 (M.D. Pa Apr. 8, 2011) ......................22

*Zakheim v. Curb Mobility LLC*,
    No. CV 22-4594, 2023 WL 5339606 (E.D. Pa. Aug. 18, 2023) ........................18

## STATUTES

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961-68....passim

Sherman Act, 15 U.S.C. § 1 ..........................................................................7, 13, 15

Sherman Act, 15 U.S.C. § 2..................................................................7, 13, 16, 17

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...............................................................................................8

Fed. R. Civ. P. 9(b) ...........................................................................................20, 21

VILLARREAL AND LAVOY, "OIL AND GAS EXPLORATION AND DEVELOPMENT
    AGREEMENTS," 31 Energy & Min. Inst 10, at 325, 374-75 (2010)......................6

In its August 30, 2024 Opinion granting Defendants' Motion to Dismiss the First Amended Complaint ("Amended Complaint" or "FAC"), the Court identified a number of deficiencies with Plaintiffs' claims. *See* Dkt. 212 ("MTD Opinion" or "MTD Op."). Among other things, the Court held that Plaintiffs do not have standing to pursue antitrust claims. *Id*. at 9-14. The Court also held that Plaintiffs failed to allege: (1) an anti-competitive agreement among all Defendants, *id*. at 15-18; (2) a RICO enterprise, *id*. at 23-25; (3) a RICO conspiracy, *id*. at 26-27; or (4) that defendants breached the terms of Plaintiffs' oil and gas leases. *Id*. at 27-30.

Plaintiffs' Second Amended Complaint fails to remedy these deficiencies. While Plaintiffs try to plug the holes that the Court identified in the Amended Complaint, Plaintiffs continue to rely on conclusory allegations that are entitled to no weight or on impermissible group pleading. Given Plaintiffs' continuing failure to state viable claims based upon well-pleaded allegations of *fact*, Anadarko's Motion to Dismiss the Second Amended Complaint should be granted. Moreover, dismissal should be with prejudice. Plaintiffs have now tried three times to allege viable claims. They have failed to do so, and there is no reason why they should be given a fourth opportunity. Accordingly, Anadarko's Motion should be granted, and the Second Amended Complaint should be dismissed with prejudice.

## PROCEDURAL HISTORY

Plaintiffs filed their original Complaint in February 2015.  Dkt. 1.  At that time, the only claims brought against Anadarko E&P Onshore LLC ("Anadarko") were state law contract claims related to Anadarko's use of the "netback" method for calculating royalties to landowners.  Dkt. 1, ¶¶ 244, 257, 273 (Fifth, Sixth and Ninth Causes of Action).  Plaintiffs also sued Chesapeake Energy Corporation and certain of its affiliates ("Chesapeake"); Mitsui E&P USA LLC ("Mitsui"); and Williams Partners, LP f/n/a Access Midstream Partners, L.P. and certain of its affiliates ("Access Midstream").  With regard to these defendants, Plaintiffs asserted antitrust and RICO claims based on Chesapeake's agreements with Access Midstream.  None of the antitrust or RICO claims were brought against Anadarko.

In its Motion to Dismiss the original Complaint, Anadarko argued that this Court lacked subject matter jurisdiction over the state law claims brought against it.  Dkt. 74 at 6-14.  In response, Plaintiffs filed an Amended Complaint (their first) in July of 2015.  Dkt. 94.  The Amended Complaint expanded the antitrust and RICO claims to include Anadarko, added a separate cause of action for RICO conspiracy, and asserted similar state law contract claims.  *Id*.

After defendants filed Motions to Dismiss the Amended Complaint, this case was stayed pending an action by the Pennsylvania Attorney General on similar issues.  Dkt. 151.  The case remained stayed until March 2024, when the Court lifted

the stay and ordered supplemental briefing on the long-pending Motions to Dismiss the Amended Complaint. Following the submission of that briefing and oral argument, the Court dismissed the Amended Complaint. Dkt. 212, 213. In particular, the Court dismissed the antitrust claims for lack of standing and because Plaintiffs failed to allege an anti-competitive agreement among all defendants. MTD Op. at 9-18. The Court dismissed the RICO claims because Plaintiffs failed to allege facts establishing a viable association-in-fact enterprise. Specifically, the Court held that Plaintiffs failed to plead facts showing that: (1) a relationship existed among the defendants to perpetrate the alleged purpose of the enterprise; or (2) defendants knowingly agreed to participate in the enterprise. *Id*. at 19-25. The RICO conspiracy claim was also dismissed. *Id*. at 26-27.

The Court also dismissed each of Plaintiffs' state law claims. With regard to Plaintiffs' breach of contract claim, the Court held that Plaintiffs did not state a claim because the leases at issue allowed defendants to utilize the "netback" method of calculating royalties, a method explicitly permitted under Pennsylvania Supreme Court precedent. MTD Op. at 27-31.

When it granted defendants' motion to dismiss the Amended Complaint, the Court granted Plaintiffs leave to file a second amended complaint by September 27, 2024. Plaintiffs failed to comply with that deadline, nor did they respond to the Court's October 2, 2024 order directing Plaintiffs to show cause as to why they failed

to comply with the September 27th deadline.  Instead, without permission, Plaintiffs filed the Second Amended Complaint on October 17, 2024 against Access Midstream, Mitsui, and Anadarko (collectively "Defendants").  *See* Second Amended Complaint ("SAC"), Dkt. 216.  Defendants moved to strike the complaint.  Dkt. 217.  One month later, Plaintiffs filed a motion for an extension of time to the file the Second Amended Complaint *nunc pro tunc* (Dkt. 219), which Defendants opposed.  Dkts. 223, 224, 225.

On May 1, 2025, the Court granted Plaintiffs' motion.  Dkt. 229.  The Court explained that, "[w]hile Plaintiffs' counsel's inadvertence and failure to provide the Court with a robust reason for his inaction might be construed as bad faith, to conclude over a decade of litigation on a technicality caused by one lawyer's negligent actions stands in contrast to this Court's preference to resolve matters on the merits."  *Id* at 7.

## PLAINTIFFS' FACTUAL ALLEGATIONS[1]

Stripped of Plaintiffs' conclusions, labels, and hyperbole, the key facts Plaintiffs allege are as follows:

---

[1] Plaintiffs' factual allegations are assumed to be true only because they must be for the purposes of this motion. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Beginning in 2006, Anadarko obtained hundreds of oil and gas leases for properties located in the Marcellus Shale region in Pennsylvania.  SAC ¶ 133. Plaintiffs hold royalty interests under certain of those leases.  *Id*. ¶ 1.

In September 2006, Chesapeake and Anadarko entered into a Joint Exploration Agreement covering portions of various Pennsylvania counties.  *Id*. ¶ 134.  Pursuant to the Joint Exploration Agreement, Chesapeake served as the operator of the leases within the designated area and Anadarko assigned 50% of its interest in the leases to Chesapeake.  *Id*.  Moreover, Plaintiff alleges, upon information and belief, that Chesapeake and Anadarko agreed, either through the Joint Exploration Agreement or some other contemporaneous or subsequent agreement, that Chesapeake and Anadarko would own, and Chesapeake would operate, gas gathering systems that were to be constructed.  *Id*. ¶ 136.

In November 2008, Chesapeake entered into an industry participation agreement with Statoil USA pursuant to which Chesapeake sold a minority interest in its leaseholds and other Marcellus Shale assets to Statoil USA.  *Id*. ¶ 139. Plaintiffs do not allege that Anadarko knew about or had anything to do with the industry participation agreement.

In January 2010, Anadarko and Mitsui entered into a joint venture agreement pursuant to which Mitsui received a share of Anadarko's Marcellus Shale assets in exchange for funding certain of Anadarko's development costs under the Joint

Exploration Agreement. *Id*. ¶¶ 140-141.  As part of this purported arrangement, Anadarko assigned to Mitsui its "right, title and interest in and to the Leases under which Plaintiffs hold royalty interests," as well as a minority interest in Anadarko's interest in the gathering pipelines. *Id*. ¶ 142.

Finally, Plaintiffs allege that, in December 2012, Access Midstream acquired Chesapeake's assets relating to the gathering of natural gas (the "CMO Acquisition"). *Id*. ¶¶ 198, 208.  As with Chesapeake's agreement with Statoil, Plaintiffs do not allege that Anadarko had any knowledge of, or involvement in, the CMO Acquisition.

As commentators have noted, agreements like those at issue in this case allow oil and gas companies to spread the costs and risks associated with the exploration and production of gas.  As a result, oil and gas interests can be developed faster and by a greater number of market participants[2] – an entirely pro-competitive outcome. Nevertheless, Plaintiffs allege that the routine business agreements at issue form the basis of multiple schemes:  (1) a scheme to allocate the geographic market for gas mineral rights, operating rights, and gathering services; (2) a scheme to reduce competition in the market for gas gathering services; (3) a scheme to transfer and/or

---

[2]    *See*, *e.g.*, Villarreal and Lavoy, "Oil and Gas Exploration and Development Agreements," 31 Energy & Min. Inst 10, at 325, 374-75 (2010).

bolster and extend a monopoly in the market for gas gathering services; and (4) a scheme to defraud Plaintiffs of royalties. *Id*. at ¶¶ 11-23.

Based upon these alleged schemes, Plaintiffs assert claims for violations of Section 1 of the Sherman Act against Anadarko (First Cause of Action) and all Defendants (Second Cause of Action); violations of Section 2 of the Sherman Act (Third Cause of Action); violations of the RICO statute (Fourth Cause of Action); conspiracy to violate the RICO statute (Fifth Cause of Action); and breach of contract (Sixth Cause of Action). Plaintiffs do not, however, add allegations of *fact* needed to plead viable claims. Instead, Plaintiffs continue to rely primarily on conclusory statements that do nothing to remedy the numerous defects in the Amended Complaint.

For instance, the Second Amended Complaint adds a "new" First Cause of Action, a Sherman Act Section 1 claim against Anadarko. *Id*. ¶¶ 243-268. Aside from a few conclusory paragraphs alleging that "Plaintiffs were in substance sellers in the market for Gas Mineral Rights" (*Id*. ¶ 252, 254), that Chesapeake, Anadarko, and Mitsui benefited from above market prices for gathering services (*Id*. ¶ 256), and that an alleged "monopsony" and/or "monopoly" resulted in Plaintiffs receiving below market royalties (*Id*. ¶ 265), this "new" cause of action is nearly identical to the Section 1 claim that the Court previously dismissed. *Compare* FAC ¶¶ 236-256, *with* SAC ¶¶ 243-268. Likewise, other than new conclusions, the Second and Third

Causes of Action are nearly identical to the insufficiently pleaded antitrust claims from the Amended Complaint. *Compare* FAC ¶¶ 236-256, *with* SAC ¶¶ 269-290, and FAC ¶¶ 257-267, *with* SAC ¶¶ 291-302. Similarly, Plaintiffs added no material facts to the RICO claims and left the breach of contract claim essentially untouched. Given Plaintiffs' inability to allege facts that address the numerous deficiencies in the Amended Complaint that the Court painstakingly detailed, the Second Amended Complaint should be dismissed.

## STATEMENT OF QUESTIONS INVOLVED

Pursuant to Fed. R. Civ. P. 12(b)(6), have Plaintiffs stated a claim for which relief can be granted against Anadarko?

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. When assessing the sufficiency of a complaint, a court should first take note of the elements the plaintiff must plead to state a claim. The court should then identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As the Supreme Court has explained, a plaintiff must allege a factual basis for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Once the court has disregarded the labels and conclusions, it should then determine whether the well-pleaded factual allegations state a claim for relief.  Only well-pleaded facts – not conclusions nor recitations of the elements of a claim – are entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 679.

## **ARGUMENT**

## I.    **PLAINTIFFS FAIL TO STATE SHERMAN ACT CLAIMS.**

In their Second Amended Complaint, Plaintiffs fail to remedy the defects the Court identified in their Amended Complaint.  Instead, Plaintiffs merely add conclusory allegations in their continuing effort to turn a basic contract dispute over royalty payments into an antitrust scheme.  As discussed below, Plaintiffs continue to fail to allege facts showing that:  (1) they have antitrust standing, or (2) Anadarko participated in an anticompetitive agreement to restrain trade or a conspiracy to monopolize.  Accordingly, the First, Second, and Third Causes of Action should be dismissed with prejudice.

### A.    **Plaintiffs Lack Standing to Bring Antitrust Claims.**

To have antitrust standing, Plaintiffs must allege facts showing that they suffered an injury "of the type that the antitrust laws were intended to prevent and . . . that flows from that which makes the defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977); *Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 343 (3d Cir. 2018) ("Of the requirements for

antitrust standing, antitrust injury is 'a necessary but insufficient condition.'") (quoting *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997). As this Court has explained, granting a motion to dismiss for lack of standing is proper "if the allegations do not support the inference that plaintiff suffered an injury proximately caused by conduct intended to harm competition." *Cable Line, Inc. v. Comcast Cable Commc'ns of Pennsylvania, Inc.*, No. 3:16-CV-1000, 2017 WL 4685359, at *3 (M.D. Pa. Oct. 18, 2017). Here, Plaintiffs fail to allege standing for at least two separate reasons:

*First*, as the Court found with respect to the Amended Complaint, Plaintiffs do not allege "any facts supporting [that] there was a reduction in competition . . . ." MTD Op. at 12. For instance, Plaintiffs plead no facts showing that all landowners in the purported geographic market who sought to lease their land suffered royalty deductions as a result of the alleged anticompetitive agreements. Nor do they allege facts showing that the deductions were not permissible under the terms of their leases or the Pennsylvania Supreme Court's ruling in *Kilmer*. Instead, Plaintiffs have merely added to the First Cause of Action a number of allegations that are substantially similar to allegations that appeared in the Amended Complaint and which this Court held were insufficient. *Compare* SAC ¶¶ 247-251, 253, 257-268 *with* FAC ¶¶ 240-256. They have also added the purely conclusory allegation that the Joint Exploration Agreement "was intended to, and did result in the reduction of

competition." SAC ¶ 138. This is the exact type of fact-free allegation that the Supreme Court instructs this Court should disregard. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

Furthermore, instead of alleging harm to competition, "Plaintiffs only allege harm to themselves though the underpayment of royalties." MTD Op. at 12. As such, Plaintiffs fail as a matter of law to allege that they have antitrust standing. *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 250-51 (3d Cir. 2022) (affirming dismissal where the plaintiff sought "remedy for its injury alone," which was based on "an objectionable term in a commercial agreement"); *Philadelphia Taxi Ass'n*, 886 F.3d at 344 (dismissing complaint where plaintiffs alleged "their own injury, namely, financial hardship," but "fail[ed] to aver an antitrust injury, such as a negative impact on consumers or to competition in general"); *Camaisa v. Pharm. Rsch. Assocs., Inc.*, No. 21-CV-00775-EJW, 2022 WL 843653, at *4 (D. Del. Mar. 22, 2022) (granting a motion to dismiss where the "alleged injury flows not from an alleged antitrust violation, but rather, it flows from an alleged breach of contract").

***Second***, Plaintiffs also lack standing because, as the Court recognized, "they are neither consumers nor competitors in the alleged relevant markets." MTD Op.at 13. Plaintiffs' monopolization claim is based upon a purported monopoly in the market for gathering services, including the purported transfer of a monopoly from Chesapeake to Access Midstream in connection with the CMO Acquisition. SAC ¶¶

11

293, 295.  Plaintiffs do not allege, however, that they either bought or sold gathering services.  As such, they lack standing.

In the hopes of curing this defect, Plaintiffs allege that they are "within the area of the economy endangered by the breakdown in competitive conditions in the markets for Gas Mineral Rights, Operating Rights, and Gas Gathering Services." SAC at ¶ 262.  This allegation is insufficient for two separate reasons.  First, this allegation is substantially similar to a conclusory allegation that the Court previously held is insufficient.  *See* FAC ¶ 251 (alleging that Plaintiffs were "within the area of the economy endangered by the breakdown in competitive conditions resulting from the contracts or conspiracy between Chesapeake and Access Midstream in restraint of trade").  Second, the only facts Plaintiffs allege regarding their role in the market is that they are landowners who have a royalty interest under gas and oil leases.  As such, they lack standing as a matter of law.  As this Court previously explained, "Whereas Plaintiffs may play an upstream role in the market for gas mineral rights, their tangential relationship to the relevant market is insufficient to confer standing." MTD Op. at 13-14.

Because Plaintiffs are not participants in the relevant market, they can establish standing only if "their injuries were the very means by which the defendants carried out their illegal ends."  *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 173 (3d Cir. 2015).  By contrast, "harm that is

secondary to the anticompetitive conduct cannot support antitrust injury." *Id.* Here, Plaintiffs' theory is that increased gathering costs were charged to the "Lessees" – Chesapeake, Mitsui, and Anadarko – and that the Lessees then passed some of the increased costs along by making larger deductions when calculating Plaintiffs' royalties. While this alleged harm to Plaintiffs' royalties might be an "incidental" effect of the purported monopolization in the market for gathering services, it was certainly not "essential[] to the restraint on trade." *Id.; see also* MTD Op. at 14-15 ("Even more damaging to their claim for standing is Plaintiffs' inability to point to non-conclusory, factual allegations in the complaint demonstrating how reducing their royalties was a necessary means for Defendants to reduce competition. . . ."). Therefore, Plaintiffs' antitrust claims fail.

### B.    Plaintiffs Do Not Allege An Anticompetitive Agreement

Plaintiffs' antitrust claims also fail because Plaintiffs do not allege an anticompetitive agreement under Section 1 of the Sherman Act or a conspiracy to monopolize under Section 2 of that Act. Accordingly, for this second independent reason, Plaintiffs' first three Causes of Action should be dismissed with prejudice.

### 1.    Plaintiffs Fail to Allege Facts Supporting an Anticompetitive Agreement under Section 1

As with the Amended Complaint, "Plaintiffs offer no factual allegations supporting their conclusion that all Defendants, acting in concert, had an agreement to restrain trade in violation of the Sherman Act." MTD Op. at 17. Indeed, Plaintiffs

still fail to allege facts showing that the Defendants made a "conscious commitment to a common scheme." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011). They also fail to allege facts "specify[ing] a time or place that any actual agreement . . . occurred" or identifying the "particular individuals or organizations [that] made such an agreement." *Kerwin v. Casino*, 802 F. App'x 723, 725-26 (3d Cir. 2020) (quoting *Burtch*, 662 F.3d at 225).

As to Anadarko, Plaintiffs merely allege that Anadarko entered into a Joint Exploration Agreement with Chesapeake and later assigned lease interests to Mitsui. Plaintiffs do not allege facts showing that Anadarko ever agreed with Chesapeake or the Defendants to reduce competition in the markets for gas mineral rights, gathering services, or operating rights. Nor do Plaintiffs identify when any such alleged agreement was reached or who agreed to it. In fact, Plaintiffs allege no facts whatsoever showing that Anadarko was even aware of, or had anything to do with, Chesapeake and Statoil's industry participation agreement or the CMO Acquisition. Instead, Plaintiffs continue to rely upon the same conclusory allegations the Court has already rejected. MTD Op. at 17; *compare* SAC ¶ 273 with FAC ¶ 240 (making the same conclusory allegations about an alleged conspiracy).[3]

---

[3] Even with regard to the transactions involving Anadarko, Plaintiffs fail to allege necessary facts. As Plaintiffs admit, the Joint Exploration Agreement and Anadarko's assignment of leases to Mitsui involved the sale of interests by Anadarko in return for cash and other consideration. Accordingly, these agreements are wholly

Moreover, as this Court has already held, Plaintiffs cannot allege an illegal agreement based upon Lessees' deduction of post-production costs when calculating Plaintiffs' royalties.  MTD Op. at 17-18.  Rather, these are the exact type of "parallel conduct" allegations that fail to support the inference of an agreement, particularly where "independent self-interest is an obvious alternative explanation for defendants' common behavior."  *Kerwin*, 802 F. App'x at 726 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 326 (3d Cir. 2010)).  Indeed, in 2010, the Pennsylvania Supreme Court held that post-production costs can be deducted when royalties are being calculated.  *Kilmer v. Elexco Land Servs., Inc.*, 990 A.2d 1147, 1149 (Pa. 2010).  As such, it was neither surprising nor illegal for Lessees to make such deductions.  *See*, *e.g.*, SAC at ¶¶ 174-179 (alleging that Chesapeake and the "Other Lessees" began deducting post-production costs after *Kilmer* was decided).

In short, Plaintiffs fail to allege facts showing that "each Defendant was even aware of each other's conduct, never mind had a unity [of] purpose."  MTD Op. at 17.  As such, their Sherman Act Section 1 claims fail.

2.    Plaintiffs Fail to Allege Facts Supporting a Conspiracy to Monopolize the Market for Gathering Services

Turning to Plaintiffs' monopolization claim under Section 2 of the Sherman Act (the Third Cause of Action), Plaintiffs allege a violation based on a purported

---

"in line with a wide swath of rational and competitive business strategy."  *Twombly*, 550 U.S. at 554.

conspiracy among Chesapeake and the Defendants to grant Access Midstream a monopoly in the gathering services market. But Plaintiffs do not make a single allegation of fact regarding Anadarko's alleged involvement in the purported conspiracy. Among other deficiencies, Plaintiffs allege no facts regarding: (1) Anadarko's purported agreement with Chesapeake or the other Defendants; (2) any action taken by Anadarko in furtherance of the conspiracy; or (3) Anadarko's intent to install Access as a monopolist.

Instead of making allegations of fact, Plaintiffs improperly rely upon conclusory allegations or group pleading. In Paragraph 294 of the Second Amended Complaint, for instance, Plaintiffs allege that Defendants "willfully, knowingly, and intentionally combined or conspired, directly or indirectly" with Chesapeake and Access Midstream to enable Chesapeake and Access Midstream to obtain monopoly power in the market for Gathering Services. However, Plaintiffs make no allegations of fact to support this naked conclusion.

Likewise, Plaintiffs argue that "Defendants" committed various overt acts in furtherance of the conspiracy. *See* SAC, ¶ 296. This allegation fails for two separate reasons. First, Plaintiffs do not allege that Anadarko committed any overt act. Instead, Plaintiffs only identify purported overt acts committed by Chesapeake or Access Midstream. *Id.* (alleging overt acts related to the CMO Acquisition or the provision of gathering services). Second, this allegation is a textbook example of

improper group pleading and an insufficient basis to permit Plaintiffs to proceed against Anadarko. *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 387 (S.D.N.Y. 2019); *Int'l Constr. Prod. LLC v. Caterpillar Inc.*, No. CV 15-108-RGA, 2016 WL 264909, at *10 (D. Del. Jan. 21, 2016). As the Eastern District of Pennsylvania has explained, a plaintiff must do more than make "repetitive generic reference[s] to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) (collecting cases). Accordingly, Plaintiffs' Sherman Act Section 2 claim should be dismissed.

## II.    THE RICO CLAIMS SHOULD BE DISMISSED

This Court dismissed the RICO claims in the Amended Complaint because Plaintiffs did not allege an association-in-fact RICO enterprise or a RICO conspiracy. MTD Op. at 23-27. Plaintiffs have not cured these failures; nor have they alleged a pattern of racketeering activity. Accordingly, for any of these reasons, the Fourth and Fifth Causes of Action should be dismissed.

### A.    Plaintiffs Do Not Allege an Association-in-Fact RICO Enterprise

The Court previously dismissed the RICO claims because Plaintiffs failed to allege a RICO enterprise. MTD Op. at 23-26. Plaintiffs do not cure any of the defects identified by the Court.

For instance, the Court held that "normal business relationships, without more, are insufficient to support an association-in-fact enterprise." MTD Op. at 24. Nevertheless, Plaintiffs allege that Defendants participated in the purported enterprise through entirely routine business relationships. *See* SAC ¶ 307 (alleging that Defendants participated in RICO enterprise "by means of the joint ventures, contracts, and transactions"). Indeed, with regard to Anadarko, Plaintiffs allege that Anadarko was charged inflated gathering costs by Access Midstream and that those costs were later deducted when Plaintiffs' royalties were calculated. These allegations, however, prove nothing more than a normal business relationship between Anadarko and Access, not a RICO enterprise. *Zakheim v. Curb Mobility LLC*, No. CV 22-4594, 2023 WL 5339606, at *3 (E.D. Pa. Aug. 18, 2023) ("The Third Circuit has made clear that normal business relationships, without more, are insufficient to support an association-in-fact enterprise") (citing *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991)).

The Court also held that Plaintiffs "failed to allege a relationship among all Defendants to perpetuate" the enterprise's purported purpose of defrauding Plaintiffs through allegedly excessive post-production costs. MTD. Op. at 24. Once again, Plaintiffs fail to cure this defect. In fact, Plaintiffs continue to rely on the same sort of conclusory allegations that the Court expressly rejected in the past. *See* MTD Op. at 24 (rejecting as "conclusory" – "especially as to Anadarko and [Mitsui]" –

18

Plaintiffs' allegation that "Each of the Defendants . . . agreed to, and did participate in the conduct of the Enterprise, and carried out its role using broad and independent discretion"); SAC ¶ 307 (alleging that "Each of the members of the Enterprise . . . also conducted and or participated, directly or indirectly, in the conduct of the affairs of the Enterprise . . . ").

Moreover, Plaintiffs fail to plead facts showing that Anadarko overcharged Plaintiffs for production costs. Specifically, Plaintiffs nowhere allege that Anadarko's deductions for post-production costs did not reflect Anadarko's actual costs. As such, Plaintiffs fail to allege that Anadarko took part in the claimed "common purpose" of the enterprise. *See Leeder v. Feinstein*, No. 318CV12384BRMDEA, 2019 WL 2710794, at *8 (D.N.J. June 28, 2019) (holding that plaintiff failed to allege a RICO enterprise, because "a valid RICO enterprise requires defendants to conduct or participate in the conduct of the enterprise's affairs, not just their own affairs'") (cleaned up).

Finally, the Court held that Plaintiffs failed to plead the existence of an enterprise because they alleged "independent and varied conduct by each Defendant, [but] there are no factual allegations supporting global, coordinated, and unified activity among all of the Defendants beyond Plaintiffs' conclusory allegation that such activity occurred." MTD. Op. at 24-25. As discussed above, these sorts of allegations are still lacking. Plaintiffs nowhere allege facts tying all the Defendants

19

and Chesapeake together.  They do not allege that Anadarko ever agreed to be overcharged for post-production costs, or that Plaintiffs should be defrauded through deduction of those post-production costs – in fact they do not allege that Anadarko was even aware of the purported post-production overcharges.  Instead, Plaintiffs merely summarize common business transactions and allege without support that Chesapeake and the Defendants acted in a coordinated and unified manner.  As with Plaintiffs' Amended Complaint, Plaintiffs' conclusions should be rejected.  *See* MTD Op. at 25 (dismissing RICO claim because Plaintiffs did not allege facts demonstrating that Defendants "understood the essential nature of the plan and knowingly agreed to participate in the plan") (quoting *Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395, 405 (E.D. Pa. 2013)).[4]

### B.    The Plaintiffs Have Failed to Allege a Pattern of Racketeering Activity in Compliance with Rule 9(b).

Plaintiffs' RICO claims against Anadarko also fail because Plaintiffs do not plead facts satisfying the heightened pleading standard set forth in FRCP 9(b), which requires Plaintiffs to state with particularity the circumstances constituting the predicate acts of mail and/or wire fraud.  MTD Op. at 20.  Rather than identifying

---

[4] Even if the Court were to accept Plaintiffs' allegations of mail and wire fraud, that alone would not be sufficient to establish a RICO enterprise.  Where the "[c]omplaint alleges no structure of an enterprise outside of the group's conspiracy to perform the underlying criminal offenses" the claims must be dismissed because that "is insufficient to plead the existence of an enterprise." *Leeder,* 2019 WL 2710794, at *9.

the time, place, speaker or content of the alleged misrepresentations, Plaintiffs allege only that they received "periodic royalty statements and payments." SAC ¶ 316. These allegations do not satisfy Rule 9(b). *Kovarik v. S. Annville Twp.*, No. 1:17-CV-00097, 2018 WL 1428293, at *11-12 (M.D. Pa. Mar. 22, 2018) (dismissing RICO claim where the alleged predicate act was the "regular mailing of purportedly fraudulent invoices" and noting "plaintiffs' failure to plead with particularity the circumstances of the alleged mail fraud as required by Rule 9(b)") (cleaned up).

In addition to failing to comply with Rule 9(b), Plaintiffs fail to plead the elements of mail or wire fraud as to Anadarko. Mail and wire fraud both require "proof of specific intent." *Neurosurgical Care, LLC v. Doc Sols. LLC*, No. CV 19-5751, 2022 WL 2974716, at *5 (E.D. Pa. July 26, 2022). As such, Plaintiffs were required to "specifically allege that Defendants actually knew about or participated in the fraudulent activity underpinning Plaintiff's racketeering accusations." *Id.* at *6-7 (dismissing RICO claims where plaintiff "sets forth little information substantiating any accusation of wrongdoing on behalf of [a specific defendant] and thus cannot meet the high standard needed to support a claim based on fraudulent dealings"). Here, however, Plaintiffs do not allege that Anadarko was a participant in or aware of the alleged scheme between Chesapeake and Access Midstream to inflate post-production costs. As such, Plaintiffs' RICO claims fail.

21

### C.    Plaintiffs' RICO Conspiracy Claim Fails.

For the reasons discussed above, Plaintiffs fail to allege an enterprise-in-fact or a pattern of racketeering activity. For either of these reasons, Plaintiffs' RICO conspiracy claim fails. It also fails because Plaintiffs do not allege a conspiracy. Accordingly, the Fifth Cause of Action should be dismissed.

## III.    PLAINTIFFS' CONTRACT CLAIM FAILS AS A MATTER OF LAW

As this Court recognized, Plaintiffs' contract claim fails as a matter of law. MTD Op. at 27-31. The breach of contract claim in the Second Amended Complaint is identical to the breach of contract claim in the Amended Complaint save for the addition of the word "Anadarko" in Paragraph 344. *Compare* FAC, ¶ 307 *with* SAC, ¶ 344. Accordingly, for the reasons explained by the Court, the breach of contract claim still "fails as a matter of law." MTD. Op. at 27. Indeed, under *Kilmer v. Elexco Land Servs., Inc.*, 990 A.2d 1147, 1149 (Pa. 2010), "deducting post-production costs has been upheld as permissible by the Pennsylvania Supreme Court." MTD. Op. at 18. As a result, courts routinely dismiss claims alleging that a lease or implied-in-fact obligation was breached through the deduction of post-production costs. *See*, *e.g.*, *Coastal Forest Res. Co. v. Chevron U.S.A., Inc.*, No. 2:20-CV-1119, 2021 WL 1894596, at *3 (W.D. Pa. May 11, 2021); *Ulmer v. Chesapeake Appalachia*, LLC, No. 4:08-CV-2062, 2011 WL 1344596, *3 (M.D. Pa Apr. 8, 2011); *Pollock v. Energy Corp. of Am.*, No. CIV.A. 10-1553, 2011 WL 3667289, at *5 (W.D. Pa. June 27, 2011),

*report and recommendation adopted*, 2011 WL 3667385 (W.D. Pa. Aug. 22, 2011). Accordingly, the Sixth Cause of Action should be dismissed.

## **CONCLUSION**

For the reasons stated herein and in Anadarko's prior briefing, Anadarko respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Dated: June 18, 2025

By: /s/ Steven E. Bizar

Steven E. Bizar (PA 68316)
Michael Doluisio (PA 75060)
Elisa Beneze (PA 333485)

DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: 215-994-2205
Steven.bizar@dechert.com
Michael.doluisio@dechert.com
Elisa.beneze@dechert.com

Attorneys for Defendant
Anadarko E&P Onshore LLC

23

## CERTIFICATE OF COMPLIANCE

I, Steven E. Bizar, attorney for Defendant Anadarko E&P Onshore LLC, hereby certify that Defendant Anadarko's Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint contains 5,385 words as calculated by the word count function of Microsoft Word, which is within the limit of 7,500 as granted in the Joint Stipulation Enlarging Length of Motion to Dismiss Briefs (Dkt. 234).

By: */s/ Steven E. Bizar*
Steven E. Bizar

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, I caused a copy of the foregoing document to be filed electronically using the Court's electronic filing system and served upon designated counsel of record for all parties in the above-captioned matter.

By: */s/ Steven E. Bizar*
Steven E. Bizar